**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| T.R.B. INTERNATIONAL SA,<br><br>    PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 2:26-CV-00275 |

## COMPLAINT

Plaintiff, T.R.B. International SA ("TRB" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A (collectively, "Defendants"), which use at least the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Indiana and this Judicial District, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Indiana and within this Judicial District. Specifically, Defendants have purposefully sold products infringing on Plaintiff's intellectual property to consumers in Indiana.[1] As Plaintiff's claims arise directly from these

---

[1] Plaintiff completed a sales transaction from each Defendant into the State of Indiana. Confirmations of these purchases can be found in Exhibit 3.

forum-directed activities, the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the U.S., including Indiana, through the fully interactive, commercial Defendant Internet Stores. Each Defendant is committing tortious acts, engaging in interstate commerce, and wrongfully causing substantial injury in the State of Indiana.

### JOINDER

4.      Joinder is proper pursuant to Federal Rule of Civil Procedure 20(a)(2), as there is a logical relationship between and among all Defendants, and Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all Defendants will arise in the action.

5.      Plaintiff has filed, as **Exhibit 2** hereto, Schedule A which details: (1) the defendant store names, and (2) the online marketplace URLs on which Defendants sell counterfeit products through the unauthorized use of Plaintiff's trademarks.

6.      The Defendant Internet Stores share a number of commonalities suggesting that they are interrelated and/or working in active concert with one another, such as: common naming conventions, overlap of business names and contact information, use of the same product images, sale of identical products, identical product listing titles, shared return addresses on packages, and other indicators that Defendants are in active concert with one another.

7.      While it is likely that a significant number of Seller Aliases included in Schedule A are operated by the same individual and/or entity, it is not until the third-party marketplaces produce registration data for these stores that Plaintiff is able to discover the true identity or identities of the individuals and/or entities operating the Defendant Internet Stores.

8.      Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individuals and/or entities, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all Defendants is proper at this stage, as severing the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

9.      This action has been filed by TRB to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable reputation and goodwill by offering for sale and selling unauthorized and unlicensed products using counterfeit versions of Plaintiff's federally registered trademarks.

10.     Plaintiff, T.R.B. International SA, is the owner of several federally registered trademarks covering its Vilebrequin clothing brand (collectively, "VBQ Trademarks"); the VBQ Trademarks are listed in the table below, and true and correct copies of the trademark registrations are attached hereto as **Exhibit 1**.

| VBQ TRADEMARKS | | | |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| 2824937 | VILEBREQUIN | IC 9: [ Glasses and ] sunglasses<br><br>IC 24: Beach towels<br><br>IC 25: Clothing and leisure clothing, namely, bathing suits, bathing shorts, pullovers, knit jackets, headwear, and knit bottoms<br><br>IC 35: Retail clothing stores | March 23, 2004 |
| 3171054 | | IC 22 & 39: Shirts, scarves, vests, jackets, trousers, parkas, sweaters, [ dressing gowns, ] underwear, [lingerie,] bathing suits, swim trunks, [ bathing caps,] bathing trunks, wet suits; footwear, namely, sandals, shoes, espadrilles, beach shoes; headwear; [ hosiery, ] [ socks, stockings; ] clothing accessories, namely, bandanas, belts, scarves, [gloves, neckties;] waterproof clothing, namely, rain coats, [ rainwear, foul weather gear, ] and wind resistant jackets; athletic wear, namely, jogging suits, shorts, sweat pants, sweat shirts, sweat suits, [tank tops, ]tracksuits, and warm up suits | Nov. 14, 2006 |

3

| VBQ TRADEMARKS | | | |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| 4910869 | **VILEBREQUIN** | IC 9: Spectacles<br><br>IC 18: All-purpose carrying bags; beach bags, small bags for men, shoulder bags, reusable shopping bags [, traveling bags ]<br><br>IC 25: Clothing, namely, tank tops, Bermuda shorts, shirts, trousers, polo shirts, dresses, [ skirts, ] tee-shirts, sweatshirts, hooded sweatshirts, sweaters, vests, wind-resistant jackets, jackets, blousons, [ blazers, underwear, short underwear, ponchos, sashes for wear, ] scarves, bandanas, one-piece play suits, bathing suits, bathing trunks, boxer shorts, pareus, [ belts; ] footwear; headgear, namely, visors and beanies; hats and caps of all kinds | March 8, 2016 |
| 6071869 | **VBQ** | IC 25: Clothing, namely, tank tops, bermuda shorts, shorts, shirts, trousers, polo shirts, dresses, skirts, t-shirts, hoodies, pullovers, vests, wind resistant jackets, suit jackets, jackets, blazers, underwear, shorties in the nature of underwear, ponchos, scarves, scarf, bandanas, one-piece suits, bathing suits, bathing trunks, boxer shorts, pareos, belts; footwear; headwear, namely, visors, caps with visors and beanies; headwear, namely, hats and caps | June 9, 2020 |
| 6155622 | | IC 18: Trunks and suitcases; bags, namely, all-purpose sport bags, clutch bags, duffel bags, shoulder bags, school bags, backpacks, tote bags, garment bags, belt bags, weekend bags, purses; handbags; traveling bags, shoe bags; beach bags, small bags for men and for women; shoulder bags; shopping bags, namely, leather shopping bags, canvas shopping bags, shoulder-strap bags, carrier bags; traveling sets consisting of travel bags, travel cases, shoe bags, and toiletry and shaving bags sold empty, vanity cases sold empty, luggage, garment bags for travel, make-ups bags sold empty, attaché-cases, briefcases, wallets; umbrellas; parasols | 22-Sep-20 |
| 6932658 | | IC 24: Fabrics for textile use; bed covers; plastic table covers; household linen; bath linen; bath mitts; face towels of textile materials; beach towels; cotton fabrics; table linen of textile materials; textile tablecloths; table napkins of textile; picnic blankets; bed linen; bed sheets; pillow shams; pillowcases; mattress covers; curtains of textile or plastic materials; labels of textile materials; upholstery fabrics; unfitted furniture coverings of fabric materials; wall hangings of textile materials; flags made of textile and plastic materials | 27-Dec-22 |

11.     In an effort to deceptively profit from the VBQ Trademarks, Defendants utilize the Defendant Internet Stores, designed to give the impression that they are legitimate licensees or resellers of authentic products manufactured or authorized by TRB, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing counterfeit products related to the Vilebrequin brand (herein, "Counterfeit Products").

4

12. Defendants created ecommerce stores using one or more Seller Aliases, which are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.

13. Plaintiff has been and continues to be irreparably damaged through consumer confusion, reputational harm, loss of exclusivity over, and control of, its valuable VBQ Trademarks as a direct result of Defendants' actions and is thus seeking injunctive and monetary relief.

**THE PLAINTIFF**

14. TRB is based in Switzerland and manages worldwide operations for the luxury swimwear and resort-wear brand Vilebrequin.

15. The Vilebrequin brand was created in 1971 in Saint-Tropez by Fred Prysquel, a journalist and automobile enthusiast. Observing that traditional men's swimwear was restrictive and lacked style, he designed a longer, more comfortable, and brightly colored swimsuit inspired by Californian surfers. He crafted the first prototype using spinnaker sailcloth, a lightweight fabric that dries quickly. This innovation immediately set Vilebrequin apart and anchored the brand in the relaxed yet refined spirit of the French Riviera.

16.     TRB expanded the Vilebrequin brand rapidly from the 1980s-2000s, diversifying product lines, increasing brand presence in major international cities, and evolving into a global comprehensive luxury beachwear house through its core tenets centered on craftsmanship, high-quality fabrics, vibrant prints, and Mediterranean elegance. Today, it is internationally recognized as one of the leading luxury swimwear brands, operating approximately 200 stores, and having around 880 points of sale across its flagship stores, franchises, luxury department stores, and resort partnerships. TRB also maintains a strong international e-commerce platform to ensure global accessibility.

17.     TRB owns the exclusive rights to develop, manufacture, distribute, license, sell, promote and otherwise exploit goods and services of every kind and nature covered by and utilizing the VBQ Trademarks throughout the world in perpetuity. This includes VBQ branded products such as clothing, namely, tank tops, Bermuda tops, shirts, polo shirts, t-shirts, trousers, dresses, shorts, swimwear, including bathing suits, bathing shorts, and bathing trunks; footwear; headgear; hats and caps, etc. (collectively, "VBQ Products"). VBQ Products feature at least one of the VBQ Trademarks.

18.     The VBQ Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. They are inherently distinctive; valid; subsisting; and in full force and effect. They have been used widely, exclusively and continuously in connection with VBQ Products such that consumers identify Plaintiff as the source or origin of those goods, making the VBQ Trademarks famous marks as defined in 15 U.S.C. §1125. All but one are incontestable and evidence Plaintiff's exclusive rights to use the VBQ Trademarks pursuant to 15 U.S.C. §1115.

19.     TRB owns the exclusive rights to develop, manufacture, distribute, license, sell, promote, and otherwise exploit VBQ Products of every kind and nature using, or associated with,

the VBQ Trademarks. TRB's genuine VBQ Products are sold and distributed through a worldwide network of authorized licensees, distributors, and retailers throughout the United States and in Indiana. Below are examples of authentic product listings:



| AUTHENTIC PRODUCT EXAMPLES |
| --- |

MEN SWIM TRUNKS MICRO RONDE DES TORTUES
$350.00

MEN LINEN CAP LOGO - VILEBREQUIN X ST REGIS
$145.00

MEN COTTON FULL ZIP HOODIE BIG TURTLE EMBROIDERY
$335.00

20.     TRB has expended significant time, energy, money, and resources into promoting VBQ Products. For example, TRB spends approximately eight million U.S. dollars per year on marketing and promotion of the Vilebrequin brand. TRB has incurred substantial costs and dedicated significant resources to the marketing, promotion, and commercialization of VBQ Products, including, without limitation, asset creation and production, digital advertising, traffic acquisition, and public relations services.

21.     Vilebrequin has been recognized in fashion publications like Women's Wear Daily and MR magazine, which highlighted its enduring influence and success. Vilebrequin frequently collaborates with major artists, hotels, and brands, which generates significant industry buzz and

recognition. Partners have included St. Regis Hotels & Resorts, Off White, Karl Lagerfeld, The Rolling Stones, and various contemporary artists.

22. Due to Plaintiff's marketing efforts and the international recognition received in the fashion industry, VBQ Products are widely known and are exclusively associated by consumers as being sourced from Plaintiff. As such, the recognition and goodwill associated with Vilebrequin are of incalculable and inestimable value to the Plaintiff.

23. TRB has made efforts to protect its interests in and rights to the VBQ Trademarks. TRB and its licensees are the only businesses and/or individuals authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing or featuring the VBQ Trademarks.

24. Plaintiff has not licensed or authorized Defendants to use the VBQ Trademarks nor as sellers of VBQ Products.

**THE DEFENDANTS**

25. Defendants are individuals and/or business entities whose true identities are unknown and often concealed with unverified, incomplete, or false business names, addresses, and contact information. On information and belief, all Defendants reside in foreign jurisdictions.

26. Defendants, either individually or jointly, operate one or more ecommerce stores under the Seller Aliases listed in Schedule A, which include online marketplace accounts utilizing, at least, the following marketplace platforms: Alibaba, AliExpress, SHEIN, Temu, and Walmart (collectively, "Online Marketplaces").

27. Counterfeiters, such as Defendants, typically operate numerous online marketplace accounts and/or ecommerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

28.     Each Defendant Internet Store is using and/or has used the VBQ Trademarks, without authorization to do so, in connection with the offering for sale, selling, marketing, and distributing of Counterfeit Products in direct competition with the Plaintiff.

29.     Defendants are using VBQ Trademarks, without authorization, in product listing titles, product descriptions, as keywords in the metadata of their infringing listings, on product packaging, and on physical products themselves, all in connection with the sale of Counterfeit Products. The unauthorized use by each Defendant is documented in **Exhibit 3** attached hereto.

30.     Defendants have targeted sales to Indiana residents by setting up and operating ecommerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars from U.S. consumers, and have sold Counterfeit Products to residents of Indiana. Confirmation of sales to Indiana can be found in **Exhibit 3**.

31.     Defendants' Counterfeit Products are intentionally designed to look identical or confusingly similar to genuine VBQ Products. Both Plaintiff and Defendants advertise and sell products using the VBQ Trademarks, in the same area and in the same manner, via the Internet, and during the same timeframe.

32.     Defendants' unlawful use of the VBQ Trademarks, and unfair competition, draw would-be consumers of Plaintiff's authentic VBQ Products away from Plaintiff and to the Defendant Internet Stores.

33.     Potential consumers purchasing VBQ Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine VBQ Products from Counterfeit Products.

9

34.     Consumers who intend to purchase authentic VBQ Products are purchasing Counterfeit Products and are receiving inauthentic, low-quality items which consumers associate with the Plaintiff.

35.     Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and ecommerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

36.     As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

37.     On information and belief, Defendants operate in an organized manner, often monitor trademark infringement litigation alert websites, utilize online chat platforms and groups, and use collective efforts in an attempt to avoid liability and intellectual property enforcement

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).

[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

efforts.[1] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

38.     Ecommerce store operators like Defendants regularly conceal their contact information or identities when registering ecommerce stores like the Defendant Internet Stores by: (1) using fictitious names and physical addresses which are incomplete, contain randomly typed letters, or fail to include cities and other relevant information; (2) using privacy services that conceal the owners' identity and contact information; and (3) creating multiple online marketplace accounts on various platforms using the Seller Aliases as well as other unknown fictitious names and addresses. This is done with the intention to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

39.     Further, ecommerce store operators, like Defendants, typically operate multiple payment processor and merchant accounts associated with their Defendant Internet Stores through online marketplaces and third party payment processors (collectively, the "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts.

40.     Defendants are collectively causing harm to Plaintiff's goodwill and reputation as the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

---

[1] For this reason, Plaintiff is concurrently filing a Motion for Leave to File Certain Documents Under Seal.

11

41.     Defendants, without any authorization or license, have knowingly and willfully infringed the VBQ Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Indiana.

42.     In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have caused, and will continue to cause, irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the VBQ Trademarks; created, manufactured, sold, and/or offered to sell Counterfeit Products; used the VBQ Trademarks in an unauthorized manner in order to mislead and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of TRB.

43.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. § 1114, *et seq.*)

44.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45.     Without the authorization or consent of TRB, and with knowledge of TRB's well-known ownership rights in its VBQ Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the VBQ Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the VBQ Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

46.     Defendants have manufactured, imported, advertised, promoted, distributed, displayed, offered for sale, and/or sold Counterfeit Products to the purchasing public in direct

12

competition with TRB and the VBQ Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the VBQ Trademarks through their participation in such activities.

47.     Defendants have applied reproductions, counterfeits, copies, and colorable imitations of the VBQ Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, advertising, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

48.     Defendants' unauthorized use of the VBQ Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the VBQ Trademarks.

49.     Defendants' actions constitute counterfeiting of the VBQ Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

50.     Defendants' intentional use of the VBQ Trademarks without the consent or authorization of Plaintiff constitutes intentional infringement of the VBQ Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to TRB, its

business, its reputation, and its valuable rights in and to the VBQ Trademarks and the goodwill associated therewith, in an amount as yet unknown.

52. TRB has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to TRB and its valuable VBQ Trademarks.

53. Based on Defendants' actions as alleged herein, TRB is entitled to injunctive relief, damages for the irreparable harm that T.R.B. International SA has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
### FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
### (15 U.S.C. § 1125, *et seq.*)

54. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55. Plaintiff, as the owner of all right, title, and interest in and to the VBQ Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125.

56. Defendants' promotion, manufacturing, distribution, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, sponsorship, connection, or association with Plaintiff.

14

57.     By using the VBQ Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

58.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

59.     Defendants' wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of TRB, its VBQ Products, and its VBQ Trademarks.

60.     As a direct and proximate result of Defendants' actions, Defendants have caused irreparable injury to TRB by depriving Plaintiff of sales of its VBQ Products and by depriving TRB of the value of its VBQ Trademarks as commercial assets in an amount as yet unknown.

61.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1)  That Defendants, and all persons acting for, with, through, under, or in active concert with them be permanently enjoined and restrained from:

    a. using the VBQ Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner, in connection with the manufacturing, distribution, marketing, advertising, importing, offering for sale, or sale of any product, that is not an authorized VBQ Product or is not authorized by Plaintiff to be sold in connection with the VBQ Trademarks;

15

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff, nor approved by Plaintiff, in association with its VBQ Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are sold under the authorization, control, or supervision of Plaintiff, and approved by Plaintiff for sale under the VBQ Trademarks;

d. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff and which bear the VBQ Trademarks; and,

e. further infringing the VBQ Trademarks and damaging Plaintiff's goodwill.

2) Entry of an Order that those in privity with Defendants, including any Online Marketplaces and Payment Processors, and any related entities, shall disable and cease displaying all product listings through which Defendants engage in the sale of Counterfeit Products which bear the VBQ Trademarks.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6)  For Judgment in favor of Plaintiff against Defendants that it has: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7)  That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8)  Any and all other relief that this Court deems just and proper.

Dated: June 17, 2026

Respectfully submitted,

*/s/ Alison K. Carter*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Indiana 60604
www.scip.law
929-724-7529
a.carter@scip.law

***ATTORNEYS FOR PLAINTIFF***